UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA     :

vs.                          :     Case No.: 8:16-CR-517-T-33 AEP

SHAUNA M. BOSELLI,           :
        Defendant.
_____/

**SENTENCING MEMORANDUM**

DEFENDANT SHAUNA M. BOSELLI, by and through the undersigned defense counsel, does hereby provide this Honorable Court with a sentencing memorandum pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3553(a), which will hopefully assist the Court in addressing specific issues that will be raised at the sentencing hearing presently scheduled for Friday, November 3, 2017, at 9:00 a.m.

**I.     GUIDELINE ISSUES**

There is one specific adjustment issue and one departure issue that will be addressed in this memorandum that the defense would like the Court to consider at the sentencing hearing. More specifically, pursuant to U.S.S.G. § 3B1.2, the Court should find that the Defendant's role in the conspiracy was a "minor role" and that a two-level downward adjustment to the sentencing guideline range is appropriate. In addition, pursuant to U.S.S.G. § 5H1.3, the Defendant's mental and emotional conditions justify an adjustment, departure or variance from the guideline sentence.

**A.     MITIGATING ROLE**

U.S.S.G. § 3B1.2 is entitled, "Mitigating Role". It states that: "Based on the defendant's role in the offense, decrease the offense level as follows: . . . (b) if the Defendant was a minor participant in any criminal activity, decrease by two levels."

In the commentary to 3B1.2, Application Note 2 requires multiple participants for a defendant to be eligible for a mitigating role adjustment. There are at least three participants in the conspiracy as alleged by the government. Accordingly, the Defendant is eligible for consideration of a mitigating role.

Application Note 3 (A) states that a mitigating role is appropriate if the defendant's conduct is substantially less culpable than the average participant. The guideline provides a range of adjustments for a defendant who plays a part in committing the offense that makes him or her substantially less culpable than the average participant in criminal activity.

In the case at bar, Defendant Shauna Boselli was a minor participant. She had absolutely nothing to do with the initial contact and conversations between her husband and Co-Defendant R.J. McDonald and the victim's father, Jamie P. Esposito. She was unaware and did not participate in any of their numerous conversations, both telephonic and via various computer exchanges. She had absolutely nothing to do with the planning of the trip by Esposito and his daughter to Tampa, or where they would meet, or when they would meet, or what they would do when they met. She was only told about the meeting at the Lowry Park Zoo several days before the event and given no option as to attendance.

There were numerous exchanges between R.J. McDonald and Jamie Esposito on their computers. Although R.J.'s account was entitled "Tampa Couple 337", that account had been set up with R.J. and a previous girlfriend and had nothing to do with Ms. Boselli. She never used that account and was barely aware that it existed. In addition, she never used her husband's computer. Accordingly, all of the conversations that are presented by the government concerning the exchange of the information, the planning, the enticement, and the decisions made by Esposito and

McDonald to meet had nothing to do with Ms. Boselli. She had absolutely no role in those exchanges.

The only exception was on one occasion when Ms. Boselli returned from work and found her husband R.J. McDonald on a SKYPE contact with Esposito. Her husband asked her to wave at the screen and say, "We look forward to seeing you" or "I can't wait to see you". Accordingly, as far as the "grooming process" and the many exchanges between the victim's father and Mr. McDonald, Ms. Boselli was a minor participant because she participated only on one particular day.

When told about the plan by R.J. to meet with Esposito and his daughter, Ms. Boselli objected and stressed she had no interest in such a liaison. R.J. downplayed the meeting by saying "it is probably not a 'real person'". Ms. Boselli dismissed the idea and it was not until she was told by her husband that they were going to the Lowry Park Zoo that Ms. Boselli began to understand that the liaison may occur. She objected and was threatened by her husband with physical, emotional and mental abuse if she refused to "play along".

Subsection (C) of Application Note 3 to 3B1.2 of the United States Sentencing Guidelines is entitled, "Fact-Based Determination". The note specifically states the determination as to whether to apply a mitigating role is based on the totality of the circumstances and involves the determination that is heavily dependent upon the facts of a particular case. Accordingly, the government cannot focus extensively just on one particular day where the illegal contact occurred but the Court must also consider the overall breadth of the conspiracy. As stated previously, Ms. Boselli had absolutely nothing to do with the solicitation or enticement of Jamie Esposito's daughter. Ms. Boselli participated for one day in a conspiracy that lasted months.

Subsection (C) provides the Court with a list of factors that should be considered in determining whether the defendant deserves a mitigating role adjustment. These include:

(i) The degree to which the defendant understood the scope and structure of the criminal activity;

(ii) The degree to which the defendant participated in the planning or organizing the criminal activity;

(iii) The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) The nature and extent of the defendant's participating in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

(v) The degree to which the defendant stood to benefit from the criminal activity.

Ms. Boselli had little understanding of the scope and structure of the proposed criminal activity. As stated previously, she had nothing to do with the significant number of emails or text messages or other types of communications between Jamie Esposito and R.J. McDonald. She did not participate in planning the event. Given the nature of the McDonald/Boselli marriage, a dominant/submissive arrangement, it is clear that the Defendant had no knowledge, nor was she expected to have knowledge, of the upcoming "liaison". Additional testimony on this issue will be provided at the hearing.

Likewise, the Defendant had almost no participation in organizing of the criminal activity. She was asked by her husband to wave on a "SKYPE screen" and say that she was "looking forward to seeing you". She had no idea who she was speaking with (did know it was an adult

male, but did not if anyone else was listening) or why her husband had requested her to make such a statement. This again clearly establishes her minor role in planning or organizing the criminal activity. A five-second wave and comment on a SKPYE message compared to weeks of conversations between Esposito and McDonald is "minor".

The Defendant had absolutely no decision-making authority or ability to influence or exercise the decision-making authority of this crime. Again, given the relationship between R.J. McDonald and his submissive wife, Shauna Boselli, she not only had no role or decision-making authority in this conspiracy, she did not have decision-making authority or the ability to influence or the exercise of decision-making authority on any issue. In fact, when she objected to the meeting, R.J. became angry and threatened her with punishment.

The Defendant concedes that there was inappropriate contact between her and the underage victim. Again, the Defendant had little to no discretion concerning those "acts" because she was told what to do, when to do it, where to do it and how to do it. Again, given the nature of her relationship with Co-Defendant R.J. McDonald, the facts clearly establish that she had little to no discretion. Her participation was perfunctory and was directed by her husband. She attempted to cease contact with the victim on several occasions, but was directed by her husband to continue.

Finally, the Defendant did not benefit from the criminal activity. The Defendant is not aware of any payment or agreement to pay for travel, the zoo or other expenses. She knows she received nothing. There was nothing "arousing" about the episode, in fact, it was "appalling" to Ms. Boselli. She admits her guilt, understands that what she did was wrong but given the facts of this case, was a "minor participant".

For each of the delineated factors of subsection (C) of application notes to 3B1.2, the Court must take into consideration the Defendant's mental health status and the nature of her relationship

with her husband. Counsel has provided this Court with written reports from Dr. Valerie McClain, Forensic Psychologist, and Nikki Daniels, Mental Health Specialist. The "mental health" of the Defendant undergirds the assertion that she played a "minor role". She was unable to do more and additional testimony from the Defendant's mother, Dr. McClain and Ms. Daniels will be provided at the sentencing hearing.

      B.      **MENTAL AND EMOTIONAL CONDITIONS**

U.S.S.G. § 5H1.3 is entitled, "Mental and Emotional Conditions". It states, in pertinent part, that "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. " The defense would emphasis that the court should look at the defendant's mental and emotional condition and her minor role in addition to other offender characteristics that will be presented at the sentencing hearing.

Ms. Boselli suffers from mental illness. Given her background, it is readily ascertainable and without dispute that she has experienced trauma, emotionally, physically and mentally, to the point to which she is impaired. Her history and her mental health maladies are unique and present to an unusual degree to distinguish this case from your typical case covered by the guidelines.

As the Court will note from the pre-sentence investigation report, Ms. Boselli was born in Russia. She spent the first year of her life in a Russian hospital where her only contact with other human beings was twice a day when she was fed. She was subsequently sent to an "orphanage" where her interaction with other human beings was again limited. According to the mental health specialist that will testify before this Court, Ms. Boselli suffers from post-traumatic stress disorder

major depression and attachment disorder.  Both Dr. McClain and Mental Health Specialist Nikki Daniels will elaborate on these issues during their testimony at the sentencing hearing.

In addition to suffering from the trauma imposed on her by the hospital and orphanage, Ms. Boselli was subsequently sexually abused by her great-uncle.  While living in Pennsylvania, with two parents who were often gone on "fundraising/mission trips", the Defendant was consistently and routinely sexually abused by her great-uncle for over five years.  These traumatic episodes were finally addressed by the court system in Pennsylvania though never specifically addressed by or a significant concern of the family.   This sexual abuse, when coupled with Ms. Boselli's "Russian adoption" experience and other factors clearly establishes a "reactive attachment disorder".  Again, this issue will be more fully addressed by the mental health experts that will testify at the sentencing hearing.

In U.S. v. Walter, 256 F.3d 891 (9th Cir. 2001) the court reversed the lower court and remanded the case for the district court to consider the psychological effects of the childhood abuse. Other courts have found that where a defendant was abused as a child, a downward departure was appropriate.  See, U.S. v. Roe, 976 F.2d 1216 (9th Cir. 1992) and U.S. v. Christensen, 18 F.3d 822 (9th Cir. 1994).   Ms. Boselli spent the first five years of her life in a hospital or orphanage without out significant love and interaction with other human beings and after she was adopted the attention she received from one family member was grossly inappropriate and traumatic.  The mental health specialist will testify at the sentencing hearing and establish that the defendant's mental health status is unique, was directly related to the offense  and justifies an adjustment to her ultimate sentence.   A downward departure is appropriate in this case.

Respectfully submitted,

s/ Stephen M. Crawford  
STEPHEN M. CRAWFORD, ESQUIRE  
Florida Bar No. 309613

600 S. Magnolia Ave., #275<br>
Tampa, Florida 33606<br>
(813) 251-2273<br>
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

AUSA Lisa M. Thelwell
United States Attorney's Office
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602

s/ Stephen M. Crawford

Stephen M. Crawford, Esquire
Florida Bar # 309613
600 S. Magnolia Ave., #275
Tampa, Florida 33606
Phone No. (813) 251-2273
stephen_crawford@msn.com